## J. I. CASE CO. v. UNITED STATES.
### No. 42772.

Court of Claims.
May 6, 1940.

Thomas G. Haight, of Jersey City, N. J. (J. Marvin Haynes, of Washington, D. C., Clark M. Robertson, of Milwaukee, Wis., and Robert H. Montgomery, of Washington, D. C., on the brief), for plaintiff.

Daniel F. Hickey, of Washington, D. C., and Samuel O. Clark, Jr., Asst. Atty. Gen. (Robert N. Anderson and Fred K. Dyar, both of Washington, D. C., on the brief), for defendant.

Before WHALEY, Chief Justice, and LITTLETON, GREEN, and WHITAKER, Judges.

WHITAKER, Judge.

There is involved in this case the plaintiff's income-tax liability for the year 1927 and for the year 1928.

First, with respect to its liability for 1927. The plaintiff, which kept its books on an accrual basis, deducted in its Federal income-tax return for 1926 its liability for income taxes for 1926 as imposed by the Wisconsin income-tax law of 1925, amounting to $173,684.28. In the year 1927, and before this tax was paid, the law was amended, the provision for the levy against 1926 income was repealed, and a tax was levied on two-thirds of plaintiff's income for 1926 and one-third of its income for 1927. This tax was payable in the following year, 1928.

The Commissioner of Internal Revenue allowed the deduction for 1926, but added the amount thereof to plaintiff's 1927 income, and permitted a deduction therefrom of the tax levied by the 1927 Act. The amount the plaintiff deducted on this

760

account amounted to $190,821.09, but upon an audit it was determined that its correct liability was $184,916.67. This amount was paid in 1928. No amount was paid on account of the tax levied by the 1925 Act.

Plaintiff correctly deducted from its 1926 income its liability for Wisconsin income taxes imposed by the Act of 1925, because this liability existed at the close of the year. It was a proper deduction when taken. The Government, however, says that this liability was extinguished by the Wisconsin 1927 Act, and having been extinguished, it should be added to its income in the year in which extinguished. The plaintiff replies that its liability was not extinguished, but that the date for the payment of the liability was merely postponed. It insists that its 1926 income was not relieved from liability for taxes because two-thirds of it was taxed in ascertaining its income-tax liability for 1927, and one-third of it was taxed in ascertaining its income-tax liability for 1928.

It is quite true that plaintiff's 1926 income has been subjected to tax, but it does not follow that the liability for which the deduction of $173,684.28 was taken in 1926 was not extinguished. The 1925 Act levied a tax on plaintiff's 1926 income; the 1927 Act extinguished this liability and levied a tax for the year 1927, measured by two-thirds of plaintiff's 1926 income and one-third of its 1927 income. This was a liability entirely separate and distinct from the liability for which the deduction of $173,684.28 was taken in 1926. A deduction was taken for the liability imposed by the Act of 1927 in the amount of $190,-821.09. This deduction the plaintiff was entitled to because it was liable for the payment of this amount, but it was no longer liable for the amount deducted in 1926, $173,684.28, and, therefore, this amount should be added to its income in the year in which its liability for it was extinguished. No amount has ever been paid or ever will be paid by plaintiff on account of this deduction of $173,684.28. The liability imposed by the Act of 1927 is the only liability plaintiff was under thereafter, and this deduction has been allowed. The plaintiff has therefore been given the benefit of the deduction to which it was entitled under the Act of 1925, as amended by the Act of 1927.

Section 27 of the Wisconsin Income Tax Act of 1927, Laws 1927, c. 539, provided:

"The usual income tax assessment and tax rolls as provided in chapter 71 of the statutes of 1925 shall not be prepared or certified during the year 1927 and the principal assessment and tax rolls issued under the provisions of chapter 71 of the statutes as amended by this act shall be issued on June 1, 1928 * * *."

It will thus be seen that the Act expressly provides that the tax levied for the year 1926 by the Act of 1925 was abated. It seems to us to make no difference that the 1927 Act provided that the tax levied should "apply to incomes received in the years 1926 and 1927 * * *." It is true it applied to 1926 income in part, but the liability created by the Act of 1925, for which the deduction was taken, was expressly extinguished. This liability having been extinguished in 1927, the Commissioner of Internal Revenue properly added it to plaintiff's income for 1927. Walker v. Commissioner, 5 Cir., 88 F.2d 170; Lakeland Grocery Co. v. Commissioner, 36 B. T.A. 289. Cf. Maryland Casualty Co. v. United States, 52 Ct.Cl. 201; Id., 251 U.S. 342, 40 S.Ct. 155, 64 L.Ed. 297; Kirby Lumber Co. v. United States, 44 F.2d 885, 71 Ct.Cl. 290; United States v. Kirby Lumber Co., 284 U.S. 1, 52 S.Ct. 4, 76 L.Ed. 131; Commissioner v. Simmons Gin Co., 10 Cir., 43 F.2d 327.

Next, with respect to its 1928 income. In the year 1928 the plaintiff paid to the Massey-Harris Company the sum of $700,000 in consideration of the promise of that company to discontinue the use of the names "J. I. Case," or "Case," or the initials "J. I. C." on the products of the J. I. Case Plow Works Company, Inc., which company the Massey-Harris Company had recently acquired. The plaintiff seeks to deduct this amount as an expense; the Commissioner says it is a capital expenditure.

The facts which induced the plaintiff to enter into this agreement with the Massey-Harris Company are fully set out in the findings of fact. Briefly summarized, they are as follows:

The plaintiff and the Plow Works Company had adjoining plants in the city of Racine, Wisconsin, and each had branch offices in other cities. Until 1897 both companies had been controlled by the same people, but in that year the control of the plaintiff passed to others. Almost im-

mediately friction arose between the two companies due to the similarity in their names and the proximity of their locations, and due to the fact that both companies used the name "Case," or "J. I. Case," or the initials "J. I. C." on some or all of their products. Mail intended for the plaintiff was frequently by inadvertence addressed to the Plow Works Company, and vice versa. Likewise, express and freight were improperly addressed.

The plaintiff manufactured chiefly heavy farm machinery, but also manufactured farm implements which competed with the products of the Plow Works Company. Plaintiff's plows were sold under the name of "Grand Detour," but they had stamped on them that they were manufactured by the J. I. Case Threshing Machine Company. Naturally, salesmen undertaking to sell plows or other machinery for the Threshing Machine Company were benefited by the good-will which attached to the Plow Works Company, and vice versa. A prospective purchaser approached by a salesman of the Plow Works Company might buy the plows of that company believing them to be the products of the Threshing Machine Company, and the Threshing Machine Company would thereby lose a sale; or, the reverse.

This friction finally culminated in a suit between the parties, which resulted in a final decree enjoining the plaintiff from using the words "J. I. Case," or "Case," or the initials "J. I. C." on any of its plows, unless at the same time it stated that they were not the products of the Plow Works Company. Later, the Plow Works Company got into serious financial difficulties and proposed to plaintiff to sell its assets to it, but this plaintiff refused to consider until the plaintiff learned that the Massey-Harris Company was about to purchase the Plow Works Company. Since Massey-Harris Company was a large, progressive concern, plaintiff feared the competition it would have to meet, especially if the Massey-Harris Company had the right to sell its products under the name of "Case." Accordingly, plaintiff entered into negotiations with that company to induce it to surrender its right to the use of the name "Case," which resulted in plaintiff's payment to them of $700,000 therefor.

The plaintiff insists that it acquired nothing that it didn't already have by the agreement of the Massey-Harris Company to surrender its right to use this name, and that, therefore, it cannot be a capital expenditure; but that, on the other hand, it paid this sum only to eliminate the confusion and nuisance previously existing, and that, therefore, it was a business expense.

We are of the opinion that the plaintiff by the expenditure acquired a capital asset. Prior to the agreement the plaintiff did not have the sole right to the use of this name on farm products; it had this right in conjunction with the Plow Works Company. After the agreement it had this right to the exclusion of the Plow Works Company and its successor, the Massey-Harris Company. The good-will attached to the use of this name by the plaintiff was impaired by the right of the Plow Works Company also to use it. After the agreement the value of this good-will was necessarily increased because the thing that had impaired its value had been removed.

It is not proper to say that plaintiff paid this amount to remove a nuisance. In a loose sense of the word the Plow Works Company's right to use the name was a nuisance to plaintiff, but it was not a nuisance in the legal sense of that word. The Plow Works Company's use of it was a legal use, and, therefore, not a nuisance. This legal right it surrendered in consideration of the $700,000.

The benefits incident to the elimination of the right of the Plow Works Company to the use of this name were not benefits to be enjoyed only during the year in which acquired, but were of a permanent nature and should not be charged against the income of only one year.

The plaintiff cites a number of decisions of the Board of Tax Appeals in support of its position. We do not undertake to distinguish them because we think the decision of the Board in Clark Thread Company v. Commissioner, 28 B.T.A. 1128, 1129, which was later affirmed by the Circuit Court of Appeals for the Third Circuit in 100 F.2d 257, is in entire agreement with the opinion here expressed.

The facts in the Clark Thread Company case, supra, are almost identical with those at bar. The Clark Thread Company paid the sum of $525,000 in order to induce the Blodgett & Orswell Company, a competitor, to discontinue the sale of thread under the names of "John J. Clark" or "Clark" in any form. The Board of Tax Appeals

held that the amount was paid in order to eliminate competition, citing and quoting from the opinion of the Circuit Court of Appeals for the Third Circuit in Newspaper Printing Co. v. Commissioner, 56 F. 2d 125, 127. The Circuit Court of Appeals in that case, among other things, said: "That the cost of eliminating competition is a capital asset has been established by a long line of decisions of the Board of Tax Appeals."

The payment of the $700,000 to the Massey-Harris Company was made to them to eliminate their right to compete in the sale of farm machinery through the use of the name "Case."

A different situation was presented in the case of Bliss v. Commissioner, 5 Cir., 57 F.2d 984, cited by the plaintiff. The amount paid in that case was paid in order to get rid of a trespasser who was asserting an invalid claim. By the payment the taxpayer acquired nothing that he did not already have. In this case prior to the payment the plaintiff had the right to the use of the name "Case" in common with the Plow Works Company. After the payment it had the right to the use of this name to the exclusion of the Plow Works Company, and, therefore, it did acquire something which it had not formerly had.

We are of the opinion that the $700,000 was a capital expenditure, and not an ordinary and necessary expense of doing business.

It results that plaintiff's petition must be dismissed. It is so ordered.