## IMPERIAL TYPE METAL CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 7006.

Circuit Court of Appeals, Third Circuit.

Aug. 10, 1939.

Eugene C. Fish and Leon Meltzer, both of Philadelphia, Pa., for petitioner.

James W. Morris, Asst. Atty. Gen., Sewall Key, J. Louis Monarch, John A. Gage, Sp. Assts. to Atty. Gen., for respondent.

Before BIGGS, MARIS, and CLARK, Circuit Judges.

MARIS, Circuit Judge.

This petition by the Imperial Type Metal Company to review a decision of the Board of Tax Appeals determining its income tax liability for the years 1933 and 1934, raises three issues. They will be separately considered.

1. Bad Debt Reserve Deduction.

In its income tax return for the year 1933 the petitioner claimed a bad debt deduction in the amount of $11,100, this amount having been added to its reserve for bad debts in that year. The petitioner's accounts receivable at the beginning of 1933 were $100,010.62 and at the end of the year

$142,786.65. The reserve at the beginning of the year was $7,863.52 and at the end of the year $15,244.33. The amount credited to the reserve was not fixed by taking an established percentage of accounts receivable. On the contrary the president and treasurer of the petitioner examined each account and determined upon an addition to the reserve which they, from their personal knowledge of prevailing business and economic conditions and of the debtor's financial status, considered necessary to cover possible losses.

In 1933 business conditions in the entire industry served by the petitioner were bad. Standard McCarthy, Inc., a customer, which owed the petitioner $16,000 was in very severe financial straits and did in fact become a bankrupt in 1934. The petitioner recovered less than $500 from it. For these reasons the petitioner's officers increased its bad debt reserve. The Commissioner disallowed the addition to the reserve to the extent of $3,554.61. The Board of Tax Appeals found as a fact that a reasonable addition to the petitioner's reserve for bad debts for the year 1933 was not in excess of the amount determined and allowed by the Commissioner and sustained his determination.

The petitioner relies upon section 23(j) of the Revenue Act of 1932, 47 Stat. 169, 180, 26 U.S.C.A. § 23(k), for the right to make a deduction from gross income of a reserve for bad debts. That section provides:

"Sec. 23. *Deductions from gross income*

"In computing net income there shall be allowed as deductions:

\* \* \* \* \* \*

"(j) *Bad Debts.* Debts ascertained to be worthless and charged off within the taxable year (or, in the discretion of the Commissioner, a reasonable addition to a reserve for bad debts) \* \* \*."

It will be seen that the statute requires that the additions credited by a taxpayer to a reserve for bad debts must be reasonable in order to be deductible from gross income. Whether the $11,100 addition to the reserve for 1933 was reasonable is a question of fact. The Commissioner in the exercise of his discretion found that it was excessive. His determination is entitled to a presumption of correctness. Welch v. Helvering, 290 U.S. 111, 54 S.Ct. 8, 78 L.Ed. 212. The Board was not per-

suaded by the testimony presented by the petitioner that the Commissioner erred and found as a fact that the amount as reduced by the Commissioner was reasonable. The finding by the Board if supported by substantial evidence will not be disturbed on appeal. Helvering v. Rankin, 295 U.S. 123, 55 S.Ct. 732, 79 L.Ed. 1343; Elmhurst Cemetery Co. v. Com'r, 300 U.S. 37, 57 S.Ct. 324, 81 L.Ed. 491; Helvering v. Nat. Grocery Co., 304 U.S. 282, 58 S.Ct. 932, 82 L.Ed. 1346.

■ A search of the record of this case for evidence justifying the amount added to the 1933 reserve by the petitioner discloses only generalizations as to the prevailing economic conditions and the opinions of the petitioner's officers. Except for the Standard McCarthy account there is no identification of the accounts for which the reserve was set up and even as to that account the possibility that it had already been reflected in the reserve is not precluded. The petitioner did not meet the burden which rested upon it to prove its right to the full amount of the claimed deduction and the action of the Commissioner in disallowing a part of it was properly sustained.

## II. Royalty Bonus Expense.

■ The petitioner deducted $16,496.84 on its 1933 income tax return and $28,233.07 on its 1934 return for what it described as royalty bonus expense. Its obligation to make these payments arose under an agreement of April 3, 1913, which transferred to the petitioner corporation all the assets of a metal business previously carried on by four partners. By that agreement the petitioner agreed to pay each of three of these partners or their assignees 5% of the profits of the business during his lifetime and a like amount to his estate for a period of five years after his death. The petitioner treated the payments thus made as a necessary expense incurred during the taxable years in carrying on its business. The deduction was disallowed by the Commissioner on the ground that the payments were either distributions of profits or payments for capital assets and, therefore, not deductible. The Board concluded from the facts that the payments were made by the petitioner corporation for assets acquired by it from the partners and accordingly affirmed the action of the Commissioner in disallowing the deductions.

By the terms of the 1913 agreement the former partners sold, assigned, transferred and set over to the corporation all their right, title and interest in and to "a certain metal business * * * including tools and equipment, furnaces, moulds, laboratory and supplies, lease on property, office fixtures, accounts receivable, cash on hand, stock on hand and in the process of manufacture, business assets and existing insurance policies." The business was chiefly based upon secret chemical processes which had been developed by the three partners to whom the payments were made, for the accurate analysis of type metals. There was, however, no specific reference to these secret processes in the agreement, although they were undoubtedly acquired by the corporation.

If, as the record indicates, the secret processes are part of the business assets of the partnership which were transferred to the corporation by the agreement, the payments to the three partners and their assignees out of the corporate income could not be royalties for their use, as the petitioner contends, since the agreement was an assignment not a license, and no interest in the secret processes was reserved or retained by the partners. Nowhere in the written instrument is there any mention of an agreement for royalty payments for the use of the secret processes. On the contrary the language of the agreement leads inevitably to the conclusion that the respective 5% income payments were a part of the price which the petitioner agreed to pay for title to the capital assets, including the secret processes, with which it was to start business. As such they are capital expenditures and are not deductible as current business expenses.

Petitioner relies upon the case of George La Monte & Son v. Commissioner, 2 Cir., 32 F.2d 220, in which the facts were somewhat similar. The deductibility of payments made for the purchase of capital assets was not considered in that case, however. Consequently it cannot be deemed authority in support of the petitioner's position here. Our conclusion is that the Board properly held the so-called royalty bonus expense not deductible.

## III. Additional Royalty and Employee Bonus.

The petitioner deducted in its 1933 income tax return $1,175.06 and in its 1934 return $582.67 as additional deduction for royalty and employee bonus. In prior years it had determined the amount of bonus upon a basis of net profit calculated by the use

of a depreciation rate which revenue agents concluded was too high. When the lower depreciation rate was used the net profit was increased and the bonus of necessity was greater. This is the petitioner's explanation of the need for the addition to the bonus charge.

█ █ In view of our conclusion that the royalty bonus payments were payments for capital assets and not deductible we will consider here only the claim for an addition to the employee bonus. The petitioner, although it has set up these charges in its tax returns, has not set them up as accruals for 1933 and 1934 on its books, nor had it paid any of these amounts at the time of the hearing before the Board. The taxpayer uses the accrual method of accounting. It must, therefore, take the deduction in the year in which incurred. The liability for the employee's bonus was not incurred unless and until the petitioner's board of directors ordered distribution and specifically designated the employees who were to receive the payments. This action had not been taken in 1933 or 1934.

The decision of the Board of Tax Appeals is affirmed.