## COMMISSIONER OF INTERNAL REVENUE v. ROWAN DRILLING CO.

## ROWAN DRILLING CO. v. COMMISSIONER OF INTERNAL REVENUE.

### Nos. 10187, 10236.

Circuit Court of Appeals, Fifth Circuit.

Aug. 14, 1942.

Rehearing Denied Oct. 9, 1942.

Warren F. Wattles, Sewall Key, and J. Louis Monarch, Sp. Assts. to the Atty. Gen., Samuel O. Clark, Jr., Asst. Atty. Gen., and J. P. Wenchel, Chief Counsel, and Charles E. Lowery, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for Commissioner of Internal Revenue.

Harry C. Weeks, of Fort Worth, Tex., for Rowan Drilling Co.

Before SIBLEY, HUTCHESON, and HOLMES, Circuit Judges.

HOLMES, Circuit Judge.

The taxpayer and the Commissioner by separate petitions seek a review of the Board's decision, which involves income tax liabilities for the calendar year 1932.[1] The petition of the taxpayer presents the question whether a corporation, engaged in the business of drilling oil wells for hire, may deduct from its gross income as ordinary and necessary business expenses, all costs incurred by it during said year in the drilling of certain wells pursuant to contracts providing that the consideration to the driller should be a stated portion of the oil in place. The Commissioner's petition presents the question whether an oil driller so engaged who has deducted the entire cost of such drilling as an ordinary and necessary business expense may take percentage-depletion deductions from oil payments accruing to it in subsequent years.

The crucial facts out of which these questions arise are not in dispute. During the years 1931 and 1932 the Rowan Drilling Company, a Texas corporation, was engaged in the business of drilling oil wells for hire, and in each year it drilled approximately fifty wells. Three of the wells were drilled each year in consideration of an agreed interest in the oil in place, and the remainder were drilled for cash on a footage basis. In its income tax return for 1931 the corporation deducted from its gross income, as ordinary and necessary business expenses, all of the drilling costs of all wells drilled during that year without regard to whether the consideration was cash or a part of the oil in place. The Commissioner allowed the deductions, and no issue is before us in regard to the 1931 return.

The taxpayer followed the same procedure in its 1932 tax return for the wells drilled during that year, and it later claimed a percentage-depletion deduction with respect to oil payments received during the year from the three wells drilled in 1931 for an interest in the oil. The Commissioner contended before the Board that the deduction of the drilling costs incurred in connection with the drilling of the three wells for oil payments should be disallowed, on the theory that these costs were not business expenses but were investments made in the purchase of capital assets; and he opposed the percentage-depletion deductions on the ground that, since the taxpayer had deducted the cost of its oil payment interests in 1931, it had thus secured a tax-free return of its entire capital investment, and was not entitled to recoup that investment a second time through deductions for depletion. The Board of Tax Appeals agreed with the Commissioner that the costs incurred in the drilling of the three wells for oil payments were capital investments rather than ordinary business expenses; and it agreed with the taxpayer that percentage-depletion deductions should have been allowed with respect to its income derived from the oil payments.

We think the conclusions reached by the Board were correct in both instances, and that its order should be affirmed. It is no longer open to doubt that the ownership of oil in place is a capital asset, and that the acquisition price of the asset, whether paid in cash or services, is a capital investment that may not be treated as a business expense for income-tax purposes, but must be recouped by depletion deductions from gross income.[2] The Rowan Drilling Company having given its

[1] 44 B.T.A. 189.
[2] Palmer v. Bender, 287 U.S. 551, 53 S.Ct. 225, 77 L.Ed. 489; Thomas v. Perkins, 301 U.S. 655, 57 S.Ct. 911, 81 L.Ed. 1324; Anderson v. Helvering, 310 U.S. 404, 60 S.Ct. 952, 84 L.Ed. 1277; State Consolidated Oil Co. v. Commissioner, 9 Cir., 66 F.2d 648; Dearing v.

drilling services in consideration of oil payments, the costs incurred by it as a consequence of the drilling constituted the purchase price paid by it to acquire a capital asset. This much seems to be conceded by the taxpayer, for it claimed depletion deductions with respect to its income from such oil payments; and such deductions are allowable only for the purpose of offsetting injustices resulting from the classification as income only of returns of capital commingled with income;[3] but it is contended that, since it was this taxpayer's business to drill oil wells for others for hire, and since the expenses deducted were incurred in the drilling of oil wells for others for hire, the costs incident to the drilling were ordinary and necessary business expenses irrespective of the form in which the consideration moving to it was paid. In support of this position the taxpayer relies upon Edwards Drilling Company v. Commissioner, 35 B.T.A. 341; Commissioner v. Edwards Drilling Co., 5 Cir., 95 F.2d 719, and Dearing v. Commissioner, 36 B.T.A. 843, Id., 5 Cir., 102 F.2d 91.

The Edwards Drilling Company case involved income taxes for the year 1931, and there, as was done with this taxpayer's return for 1931, the Commissioner acquiesced in the deduction of drilling costs expended for the purchase of oil payments as business expenses, and made no issue in respect thereto. In the Dearing case, as the court stated, there was no claim of right to deduct anything as a necessary expense of business in the year the expenditure was made. Neither of these cases, therefore, is precisely in point or is authority for the disposition of the question before us, and we have not discovered any other decision that sanctions the position taken by the taxpayer here.

Whether an expenditure may at the same time be an ordinary and necessary business expense and a capital investment is extremely doubtful. It seems plain that Congress never considered the possibility of one expenditure having such a dual nature, for the taxing statutes consistently deal with business expenses and capital investments as mutually exclusive of each other. Moreover, the courts repeatedly have deemed it adequate to dispose of a contention that an outlay was a business expense by simply holding that it was a capital investment.[4] In business accounting, too, these terms have different connotations that cannot be disregarded without causing confusion.

The option accorded a taxpayer to treat intangible drilling costs either as business expenses or as capital expenditures is not applicable here, since this case involves tangible as well as intangible drilling costs, and since such option is never available to a drilling contractor;[5] but the turnkey-contract decisions evolving under that option are based upon broad principles of tax law that lie at the foundation of the entire tax structure, and the reasoning applied there is equally persuasive here. The sense of the turnkey cases is that, where a lease operator hires a drilling contractor to drill a completed well for him on his property for a stated lump-sum price, that price becomes a portion of the lease operator's invested capital in the well—a part of the purchase price of a capital asset—and the intangible drilling costs may not be deducted as business expenses but must be capitalized.[6] The rationale of those decisions is that such an outlay is a capital investment, and as such, though it bears a striking resemblance to an ordinary business expense, is not recoverable except through deductions for depletion.

The turnkey cases, under the intangible drilling costs option, also serve to illustrate the fallacy in the contention that an option exists in favor of the taxpayer under the circumstances obtaining here, the claim being that the petitioner has consistently followed the practice of deduct-

Commissioner, 5 Cir., 102 F.2d 91; United States v. Sentinel Oil Co., 9 Cir., 109 F.2d 854.

3 Cf. Helvering v. Bankline Oil Co., 303 U.S. 362, 58 S.Ct. 616, 82 L.Ed. 897; Anderson v. Helvering, 310 U.S. 404, 60 S.Ct. 952, 84 L.Ed. 1277.

4 Grison Oil Corp. v. Commissioner, 10 Cir., 96 F.2d 125; Imperial Type Metal Co. v. Commissioner, 3 Cir., 106 F.2d 302; T. K. Harris Co. v. Commissioner, 6 Cir., 112 F.2d 76; Case Co. v. United States, Ct.Cl., 32 F.Supp. 754; O-W-R

Oil Co. v. Commissioner, 35 B.T.A. 452. Cf. Duffy v. Central R. R. Co., 268 U.S. 55, 45 S.Ct. 429, 69 L.Ed. 846.

5 Hardesty v. Commissioner, 5 Cir., 127 F.2d 843, 845; Article 236 (a) (1) of Treasury Regulations 77.

6 J. K. Hughes Oil Co. v. Bass, 5 Cir., 62 F.2d 176, certiorari denied 289 U.S. 726, 53 S.Ct. 523, 77 L.Ed. 1475; United States v. Sentinel Oil Co., 9 Cir., 109 F.2d 854; Hardesty v. Commissioner, supra.

ing such drilling costs as business expenses, and should be entitled, even obliged, to continue to do so. It is true that, in cases where the option as to intangible costs applies, the choice lies with the taxpayer, and, once exercised, cannot thereafter be changed to suit his subsequent convenience;[7] but the option is available only by reason of the express grant of the Regulation, and even then does not apply, as we have pointed out, to expenditures having the character of capital investments.[8] The expenditures here involved, being capital investments as to which no semblance of an option has been granted, may not validly be deducted as business expenses, and an unlawful course of procedure, however prolonged, is not made lawful by acquiescence of the Commissioner.[9]

The relevant portion of Section 23(a) of the Revenue Act of 1932 allows as a deduction from gross income all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business.[10] For the reasons already stated, we hold that these drilling costs were capital investments, and that, for income tax purposes, the same expenditure may not be both a capital investment and an ordinary and necessary expense of business. Considered in their relation to the business of the taxpayer, these expenditures were not ordinary and necessary expenses of that business. The taxpayer's business was that of drilling oil wells for others for hire. During the period from 1931 to 1939 only six wells were drilled for oil payments, and all others were drilled for cash. With respect to each of the wells drilled for cash, the acceptance of the finished well marked a completed transaction, and the consideration for the drilling immediately became an account receivable against which the drilling costs were deductible to compute the resulting gross profit. From the amount of such gross profits, ordinary and necessary business expenses, such as clerical hire, office rent, and the like, were deductible to determine the net profit of the business upon which the income tax was payable. Those expenditures directly allocable to the drilling of the wells were

not, therefore, true ordinary and necessary expenses of the business within the meaning of Section 23(a), even where the drilling was done for cash; rather they more closely resembled the cost price paid by a dealer in merchandise, who deducts his cost price from his selling price to determine his gross profit, and then proceeds to calculate his net profit by deducting his ordinary and necessary business expenses. This driller was a dealer in services, rather than commodities,[11] and its drilling costs were the acquisition price to it of the accounts receivable; they were not ordinary and necessary business expenses.

In the case of wells drilled for cash or for any property not held for the income it may produce, this distinction is immaterial because the drilling expenses are deductible regardless of whether they are the acquisition cost of a commodity in trade or ordinary and necessary business expenses; but it is vitally material in circumstances where the drilling is performed in return for a capital asset, because then the drilling costs are not expenditures deductible in bulk; they are investments in a capital asset as to which depletion deductions alone are allowable.

In summary, if a taxpayer engaged in the business of drilling oil wells for others for hire drills a well for the profit derivable from its services, drilling expenses incurred thereby are deductible in computing gross profit as a dealer in services for profit. If the drilling services are rendered in consideration of a capital asset, those services constitute the purchase price incident to the investment, and comprise a cost base recoverable by depletion. In either circumstance those expenditures truly classified as ordinary and necessary business expenses are deductible, but in neither circumstance are the drilling costs properly accountable as such business expenses.

The petition of the Commissioner may be disposed of briefly. The three wells drilled in 1931 for oil payments were capital investments as to which the drilling costs constituted the purchase price of the capital asset. Those drilling costs were

---

[7] Helvering v. Wilshire Oil Co., 308 U.S. 90, 60 S.Ct. 18, 84 L.Ed. 101.

[8] Commissioner v. Ambrose, 5 Cir., 127 F.2d 47, and cases there analyzed.

[9] United States v. George, 228 U.S. 14, 33 S.Ct. 412, 57 L.Ed. 712.

[10] 26 U.S.C.A.Int.Rev.Code, § 23(a).

[11] Services are sometimes spoken of as a commodity, but this usage is not general. See "Commodity," Webster's New International Dictionary.

not properly deductible in 1931 as business expenses, but no issue is before us as to the return for that year. Section 114 (b) (3) of the Revenue Act of 1932 provides that in the case of oil and gas wells the allowance for depletion shall be 27½ per centum of the gross income from the property during the taxable year.[12] The fact that this taxpayer, having recouped his entire investment in 1931, had no basis for depletion in 1932 is of no consequence, since the percentage depletion allowance is not conditioned upon the existence of any basis, and bears no relation thereto. Under the plain terms of the statute, it is allowable to any taxpayer who owns an economic interest in oil or gas in place and derives income therefrom during the taxable year.

The petitions for review are denied, and the order of the Board of Tax Appeals is

Affirmed.

HUTCHESON, Circuit Judge (concurring in part and in part dissenting).

The taxpayer's business as a whole is that of an oil well driller for others. His accounts are kept not upon the basis of one well or another but of all the wells drilled in the year, here fifty. In determining his profit or loss for the year as an oil well driller, he must show his receipts and his expenses as to all the wells drilled, without distinction between whether he receives the stipulated price of the well in cash or by barter. I think it is a distortion of his accounting system and of his income tax rights and obligations to treat one or two wells out of all drilled in the year as isolated transactions instead of as a part of the year's business as a whole. The drilling of the wells in question must I think be treated, just as the drilling of those drilled for cash, as drilling operations for which the taxpayer has received the prices fixed for other drilling, $9,500, $10,500, and $11,500 and in the drilling of which he has incurred, as ordinary business expenses, the costs claimed. The fact that by barter he got an oil payment instead of cash cannot, I think, change his accounting for tax purposes as to his business as a whole. While therefore I concur in the decision that the Commissioner's petition was properly denied, I dissent from the decision that the taxpayer's was also.

The fact, of which the majority makes so much, that he has acquired a capital asset, a depletable income bearing property, must be dealt with, I think, not by denying him his business expenses, but under other sections of the tax laws. If he sells the property, it must be dealt with under those sections which determine gain or loss from sale; if he derives income from the oil operations, it must be dealt with under the sections dealing with such income.

I think the majority's difficulty is that, looking at the problem with gaze too foreshortened by what it regards as inequitable tax consequences, it is seeing the problem too close up and not at a long enough range. It is looking at the transaction of the drilling for a price and the payment in an oil well as one coalesced transaction instead of, as it is, as two transactions. So regarding it, it is prevented from seeing that, as to the price paid for these wells, as is the case with all the other wells drilled in the year, there are two operations. One of them is the conduct of taxpayer's business as a driller of wells for others, with the casting up of accounts at the end of the year when, by offsetting expenses against returns, his gain or loss is determined. The other operation is what he does with the money his business thus brings in. He may use it as additional capital, or he may lay it out in whole or in part, as here, in investments outside of his business. The fact that he makes the investment here by a barter arrangement, the drilling of the well for an oil payment interest in it, instead of taking cash and then buying an oil payment with the cash, cannot, I think, alter the fact that he drilled a well in the course of his business and he laid out the price paid for it in the purchase of an investment. His business operations as an oil well driller must be accounted for as one thing, his capital transactions as another. I therefore dissent from the denial of the taxpayer's petition.